O

cc: FISCAL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADITION CLUB ASSOCIATES, LLC, a California limited liability company, | Case No. EDCV 08-1581-VAP (RCx) |
| | **[Motion filed on November 11, 2008]** |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION** |
| TRADITION GOLF CLUB SALES, a business entity of unknown form, JEFF LARSON, an individual, and DOES 1-20, inclusive, | |
| Defendants. | |

The Motion for Preliminary Injunction ("Motion") filed by plaintiff Tradition Club Associates, LLC ("Associates") came before the Court for hearing on December 15, 2008.  After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearings, the Court GRANTS the Motion for Preliminary Injunction.

## I. BACKGROUND

This case arises over the right to use the trademarks "Tradition Golf Club" and "Tradition," and involves entities associated with Tradition Golf Club in La Quinta, California: (1) Tradition Golf Club itself ("Golf Club") now operated by its members; (2) Associates, an entity that apparently operated Golf Club from 1996 until 2008, when it transferred operation to the members of Golf Club; (3) David Chapman Investments ("DCI"), a company Associates licensed to sell real estate around the Golf Club and which has operated a real estate office within the Golf Club from 1996 until the present; (4) an entity first known as "Tradition Golf Club Sales" and now known as "Club Sales La Quinta" ("Sales") that seeks to sell real estate around the Golf Club. (<u>See</u> Declaration of David Chapman ("Chapman Decl.") ¶¶ 1-6; Declaration of Blake Miraglia ("Miraglia Decl.) ¶¶ 1-5.) Associates seeks to enjoin Sales from using "Tradition" and "Tradition Golf Club" in ways likely to cause confusion as to the origin and qualities of Associates' real estate.

Associates filed its Motion for Preliminary Injunction on November 11, 2008, with supporting documents. Sales filed its Opposition ("Opp'n") on December 1, 2008, with supporting documents. Associates

filed its Reply on December 8, 2008, with supporting
documents.

## A.   Evidentiary Objections

Defendants Jeff Larson ("Larson") and Sales,
(collectively "Sales") filed objections to the
declarations of David Chapman ("Chapman") and Michael
Cosgrove ("Cosgrove").  The Court overrules them.  It
declines to consider Cosgrove's statement, in the fifth
paragraph of his declaration, that he was "engaged in
presumptive conversations" as it is meaningless.

## B.   Request for Judicial Notice

Sales asks the Court to take judicial notice,
pursuant to Rule 201 of the Federal Rules of Evidence, of
the Cross-Complaint filed by Golf Club, an entity not a
party to this case, in Case No. INC 063756 now pending
before Riverside County Superior Court Judge Harold C.
Hopp.  The Court takes notice the Cross-Complaint was
filed but does not assume the truth of the matters
averred in it.

The request for judicial notice refers the Court to
paragraph 20 of Golf Club's Cross-Complaint against
Associates, Chapman, and DCI.  This paragraph details a
January 15, 2008 transaction in which Associates
transferred to Golf Club members control of the Golf

1   Club.  This appears to be the same transaction Associates
2   claims took place in February 2008.  In the Cross-
3   Complaint, Golf Club asserts Associates breached its
4   contractual and fiduciary duties.  Paragraph 20 does not,
5   however, mention any transfer of intellectual property.
6   Thus, although the Court grants the request for judicial
7   notice, it finds the noticed document sheds little light
8   on the instant proceedings.

9

10  **C.   Facts**
11       **1.   The Parties and the Golf Club**
12            **a.   Associates**
13       In 1996, Chapman founded Associates.  (<u>See</u> Chapman
14  Decl. ¶¶ 1-2.)  From 1996 until February 2008, Associates
15  "developed, established, and operated the Tradition Golf
16  Club in La Quinta, California." (Chapman Decl. ¶ 3.)  It
17  also licensed entities to use Golf Club's intellectual
18  property.

19

20            **b.   Golf Club**
21       Golf Club is an upscale development in La Quinta with
22  golf courses and residential buildings.  (Chapman Decl. ¶
23  5.)  Golf Club is not a party to this litigation although
24  the leaders of both Sales and Associates are tied to Golf
25  Club.  Chapman is the President of Associates, which once
26  operated Golf Club.  Blake Miraglia ("Miraglia") is the
27  manager of Sales and a director on the board of Golf Club
28

and owns property around the Golf Club.  (Miraglia Decl.
¶¶ 1-3; Second Declaration of David Chapman ("Second
Chapman Decl.") ¶ 3; Notice of Errata Regarding Exhibit A
to Second Chapman Declaration.)  Golf Club sued
Associates in California Superior Court.

### c.   DCI

Since the Golf Club opened, Associates has licensed
an entity to operate a real estate office within the Golf
Club.  (Chapman Decl. ¶ 6.)  The current licensee is DCI.

Chapman reports Miraglia approached DCI in 2007 with
an offer to "buy the on-site real estate sales office" at
the Golf Club but DCI rejected Miraglia's offer.  (Second
Chapman Decl. ¶ 2.)

### d.   Sales

Sales is in the business of selling real estate
around the Golf Club.  (Miraglia Decl. ¶¶ 2-5; Second
Chapman Decl. Ex. A.)  Sales appears to consist of
Larson, a real estate agency, Miraglia, a member of the
Golf Club's board of directors, and a former DCI staff
person.

### 2.   February 2008 Changes in Golf Club Operation

In February 2008, Associates transferred operation of
the Club to the Club's members. (Chapman Decl. ¶ 7.)  The

materials filed by the parties do not reveal exactly who transferred interests to the members, who the members are, or what the terms of the transfer were.  As of February 2008, Associates "provided [the members] with a non-exclusive license that allowed them to continue using the trade name TRADITION GOLF CLUB for purposes of operating" the Golf Club.  (Chapman Decl. ¶ 7.)  DCI continued to have the right to use "the trade names TRADITION and TRADITION GOLF CLUB" to sell real estate. (Chapman Decl. ¶ 8.)  Again, Associates do not support this assertion with a copy of the February 2008 document.

**Parties' Market Real Estate Around Golf Club**

After the February 2008 transfer, DCI continued to market real estate using the trade names "Tradition" and "Tradition Golf Club." (Chapman Decl. ¶ 9.)  Associates also maintained a website with residences available around the Golf Club. (Chapman Decl. ¶ 10.)  It listed residences using a Multiple Listing Service. (Chapman Decl. ¶ 11.)  Like DCI, Associates continued to use "Tradition" and "Tradition Golf Club" in these materials. (Chapman Decl. ¶ 12.)

Associates asserts Sales began its allegedly infringing actions in October 2008.  On October 10, 2008, "Tradition Golf Club Sales, LLC" filed a Statement of Organization with the California Secretary of State.

1  (Miraglia Decl. ¶ 2.)  Tradition Golf Club Sales listed a
2  property at 78370 Coyote Canyon Court on a Multiple
3  Listing Service.  (Chapman Decl. ¶¶ 13-14, Ex. I, J.)
4  This was Miraglia's property, which did not sell, and was
5  the only listing Sales placed under the "Tradition Golf
6  Club Sales" name.  (Miraglia Decl. ¶¶ 3-4.)

8     Associates claims Sales was preparing a physical
9  presence in La Quinta and "poached" a member of
10  Associates' staff. (Declaration of Michael Cosgrove
11  ("Cosgrove Decl.") ¶¶ 2, 4.)

13    Chapman and Cosgrove report Sales' materials confused
14  people, and each were approached by people who wondered
15  whether there was a connection between Associates and
16  Sales, including real estate agents and Golf Club
17  members.  (Chapman Decl. ¶ 16; Cosgrove Decl. ¶ 5.)

19    In November 2008, Sales changed its name to "Club
20  Sales La Quinta."  In a November 14, 2008 electronic mail
21  advertisement, it trumpeted that it was "[e]xclusively
22  [s]erving the Tradition Golf Club," although it did not
23  claim to be the exclusive vendor of Golf Club property.
24  (Second Chapman Decl. ¶ 4; Ex. A.)  The November 14, 2008
25  communication stated, on behalf of an unstated entity,
26          "[w]e invite you to share in the
           excitement as we welcome Club Sales La
27          Quinta an all new Real Estate Sales and
           Marketing Team.  Club Sales will be
28

7

1                  working full time in La Quinta and will
be specializing in the Tradition Golf

2                  Club.  Effective immediately, Club Sales
La Quinta will handle Home and Lot

3                  Sales, Rentals, as well as offering a
Full Service Professional Concierge

4                  Service.

5 (Second Chapman Decl. Ex. A.)

6

7      Sales' lawyer, Todd Grayson ("Grayson") details

8 communications between himself and Associates' counsel.

9 He claims they were unable to agree about the terms of a

10 stipulated injunction, and asserts Associates' motion

11 risks sanctions under Rule 11 of the Federal Rules of

12 Civil Procedure.  (Declaration of Todd Grayson ("Grayson

13 Decl.") ¶ 2.)

14

15                    **II.   LEGAL STANDARD**

16      The parties agree that the standard for obtaining a

17 preliminary injunction in a trademark or trade name case

18 is as follows (Mot. 3:20-4:9; Opp'n 2, citing Mot. 3:20-

19 4:9):

20                  A plaintiff is entitled to a preliminary
injunction in a trademark case when he

21                  demonstrates either (1) a combination of
probable success on the merits and the

22                  possibility of irreparable injury or (2)
the existence of serious questions going

23                  to the merits and that the balance of
hardships tips sharply in his favor.  To

24                  establish a trademark infringement claim
under section 32 of the Lanham Act or an

25                  unfair competition claim under section
43(a) of the Lanham Act, [plaintiff] must

26                  establish that [defendant] is using a
mark confusingly similar to a valid,

27                  protectable trademark of [plaintiff's].

28

1    _Brookfield Communication, Inc. v. West Coast_
2    _Entertainment_, 174 F. 3d 1036, 1046 (9th Cir. 1999)
3    (internal citations omitted.)

> A Section 43(a) false designation of
> origin claim is 'recognized, with regard
> to unregistered marks, as the equivalent
> of a claim for trademark infringement.
> Therefore, in order to state an
> infringement claim under Section 43(a),
> Plaintiffs must demonstrate (1) a valid
> and protectable trademark or trade name
> and (2) the likelihood of confusion as to
> the origin of Defendants' goods or
> services.

10   _SMC Production v. SMC Promotions_, 355 F. Supp. 2d 1127,
11   1133 (C.D. Cal. 2005)(citations omitted).

12

13                      **III. DISCUSSION**
14   **A.   Valid, Protectable Trademarks**
15       Associates assert "Tradition" and "Tradition Golf
16   Club" ("the trademarks") are valid, protectable
17   trademarks.  (Mot. 3-5.)  Sales does not dispute these
18   assertions and the Court finds it has conceded the
19   trademarks are suitable subjects for protection.

20

21   **B.   Associates' Interests in the Trademarks**
22       The link between Associates and these protected
23   trademarks is subject to dispute.  Associates claims an
24   interest in the "Tradition Golf Club" and "Tradition"
25   trade marks as it has used them since 1996 in the sale of
26   real estate from an office located within the Golf Club.
27   (Chapman Decl. ¶ 4.)

28

1    Sales disputes Associates' claim and asserts the
2    trademarks may belong to Golf Club, an entity not before
3    the Court.  (Opp'n 4:13-22.)  Sales relies on the Cross-
4    Complaint of which the Court takes judicial notice.
5    Sales asserts, "[a]s shown in the cross-complaint, the
6    fundamental issue of who owns and has the right to use
7    the trademark/ service mark *TRADITION* is presently in
8    dispute as between Tradition Golf Club and plaintiff
9    herein."  (Opp'n 4:20-22.)

10

11    The Court lacks sufficient information on which to
12    determine whether Golf Club or Associates has a superior
13    claim to the trademarks.  The paragraph of the Cross-
14    Complaint to which Sales refers the Court describes a
15    dispute about a transfer in early 2008 of Golf Club
16    facilities from Associates to members of the Golf Club.
17    (Cross Compl. ¶ 20.)  It does not specifically mention
18    intellectual property.  Sales did not submit a
19    declaration or other proof from Golf Club about its
20    interest in the trademarks.

21

22    At the same time, Associates has offered no
23    documentary proof regarding the licensing agreements
24    between Golf Club and Associates or Associates and DCI.
25    Associates claims the February 2008 document "expressly
26    noted that [Associates] would continue to use the trade
27    names TRADITION and TRADITION GOLF CLUB with respect to
28

1   real estate development" but fails to provide a copy of

2   that document.  (Chapman Decl. ¶ 8.)

3

4        Nevertheless, the Court is able to determine

5   Associates' interest is superior to Sales' because

6   Associates is the senior user.  "The first to use a mark

7   is deemed the 'senior' user and has the right to enjoin

8   'junior' users from using confusingly similar marks in

9   the same industry and market or within the senior user's

10  natural zone of expansion." <u>Brookfield</u>,  174 F.3d at

11  1047.  Associates clearly began to use the trademarks

12  before Sales did and therefore Associates' claim to use

13  is stronger and it has standing to request an injunction

14  against Sales.  <u>See id.</u> at 1047.

15

16  **C.  "Tradition Golf Club Sales" Is Confusingly Similar**

17  **to the Trademarks**

18       "The core element of trademark infringement is the

19  likelihood of confusion, i.e., whether the similarity of

20  the marks is likely to confuse customers about the source

21  of the products." <u>Id.</u> at 1053; (Mot. 6.)  To determine

22  whether likelihood of confusion exists, the Court may

23  consider several factors, of which "similarity of the

24  conflicting designations; relatedness or proximity of the

25  two companies' products of services" are always

26  important. <u>Brookfield</u>, 174 F. 3d at 1053.  The "strength

27  of [plaintiff's] mark; marketing channels used; degree of

28

11

1    care likely to be exercised by purchasers in selecting
2    goods; [defendant's] care in selecting its mark; evidence
3    of actual confusion; and likelihood of expansion in
4    product lines" may be important.  Id. at 1053-54.
5    According to the Ninth Circuit, "it is often possible to
6    reach a conclusion with respect to likelihood of
7    confusion after considering only a subset of the
8    factors."  Id. at 1054.
9
10       Associates demonstrates likelihood of confusion
11   between "Tradition Golf Club," "Tradition," and
12   "Tradition Golf Club Sales."  These names are similar in
13   sound and meaning.  See Brookfield, 174 F. 3d at 1054
14   ("the more similar the marks in terms of appearance,
15   sound, and meaning, the greater the likelihood of
16   confusion").  The companies sell the same set of limited
17   products, real estate around a particular Golf Club.
18   Both factors suggest confusion.
19
20       In addition, Associates proffers evidence of actual
21   confusion.  (Chapman Decl. ¶ 16; Cosgrove Decl. ¶ 5.)
22   "[E]vidence that the use of the two marks has already led
23   to confusion is persuasive proof that future confusion is
24   likely."  GoTo.Com, Inc. v. The Walt Disney Co., 202 F.
25   3d 1199, 1208 (9th Cir. 2000); (Mot. 10.)  Associates has
26   borne its burden of demonstrating confusion is likely.
27
28

Sales offers no argument regarding likelihood of confusion.  Its Opposition concentrates on the scant activity Sales undertook under the "Tradition Golf Club Sales" name.  (Opp'n 3-4.)

**D.   Associates Demonstrates Likelihood of Irreparable Harm Regarding the "Tradition Golf Club Sales" and "Tradition" Trademarks**

Associates demonstrates confusion and likelihood of confusion flowing from use of the "Tradition Golf Club Sales" name.  From this the Court may presume Associates will suffer irreparable harm if injunctive relief is not granted.  See Brookfield, 174 F.3d at 1066, quoting Metro Pub. Ltd. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993).

Sales argues Associates' request for an injunction is moot and therefore lacks basis in law, fact or equity. (See Opp'n 3-5.)  Sales states it "will be unaffected by an order granting an injunction enjoining their use of the *TRADITION* trademark/ service mark" and it "do[es] not now and do[es] not intend in the future to use the *TRADITION* trademark/service mark in connection with their real estate services, or otherwise."  (Opp'n 2.)

Sales is mistaken that its changed behavior renders Associates' request moot.  As Sales could return to the

1 allegedly infringing use at any time, an injunction
2 remains appropriate.  See Federal Trade Commission v.
3 Affordable Media, 179 F. 3d 1228, 1237-38 (9th Cir.
4 1999); (Reply 7.)

5

6 **E.   Associates Does Not Demonstrate Likelihood of Success**
7 **on the Merits, Nor Irreparable Harm, Regarding "Club**
8 **Sales La Quinta"**

9    Sales operates under the moniker "Club Sales La
10 Quinta."  Associates argues Sales still confuses
11 customers, despite the name change, because it continues
12 to pass itself off as the sales arm of the Golf Club.
13 (Reply 5:3-4.)  In its Reply, Associates points to Sales'
14 November 14, 2008 electronic mail, quoted above, in which
15 an unnamed entity appeared to "welcome" Sales into
16 selling real estate around the Golf Club.  Associates has
17 not fully briefed how the new name infringes on its
18 intellectual property; Associates filed its Motion on
19 November 11, 2008, before the electronic advertisement.
20 Unfortunately, without further briefing Associates'
21 papers offer little more than speculation regarding the
22 likelihood of confusion.

23

24    It is not self-evident, based on Associates' previous
25 submissions, which painstakingly examine the "Tradition
26 Golf Club Sales" materials, that the same arguments apply
27 with equal force to the new "Club Sales La Quinta"
28

14

1  materials.  For example, the "Club Sales La Quinta" logo
2  featured in the November 14, 2008 electronic
3  advertisement appears very different from the samples
4  Associates offers of its stationery.  (<u>Compare</u> Second
5  Chapman Decl. Ex. A (Club Sales La Quinta logo with door
6  and scroll designs and "Club Sales" in capital letters)
7  <u>with</u> Chapman Decl. Exs. A-E (Tradition logo with golfer
8  design and "La Quinta, California" in capital letters.)
9  Also, the Court cannot know whether there has only been a
10 single source of homes around the Golf Club, or many, and
11 hence whether the entry of any other source of listings
12 around the Golf Club would tend to cause confusion.
13
14     Certainly, the threshold for finding similarity (and
15 hence confusion and likelihood of success on the merits)
16 is lower when the marks of closely related goods are
17 compared; here Associates asserts Sales is selling the
18 very same real estate.  <u>See Official Airline Guides, Inc.</u>
19 <u>v. Goss</u>, 6 F. 3d 1385, 1392 (9th Cir. 1993) (lower
20 threshold for related goods); (Mot. 6-7.)  Nevertheless,
21 Associates has not provided sufficient information for
22 the Court to conclude an injunction is warranted against
23 use of the "Club Sales La Quinta" trade name.
24
25 **F.   Bond**
26     According to Federal Rule of Civil Procedure 65(c),
27          The court may issue a preliminary
               injunction or a temporary restraining
28

15

> order only if the movant gives security
> in an amount that the court considers
> proper to pay the costs and damages
> sustained by any party found to have
> been wrongfully enjoined or restrained.

Fed. R. Civ. Proc. 65(c).  A court has discretion to require only a nominal bond or to waive the bond entirely.  <u>Save Our Sonoran, Inc. v. Flowers</u>, 408 F.3d 1113, 1126 (9th Cir. 2005).  "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  <u>Jorgensen v. Cassiday</u>, 320 F.3d 906, 919 (2003).

At the hearing, Sales' counsel requested no particular amount for the bond and stated he would rely on the discretion of the Court to set the amount of the bond.  Sales' Opposition states it will suffer little injury, if any at all, from the entry of an injunction against it.  (Opp'n 2.)  Accordingly, the Court orders Associates to file a bond in the amount of $2,500 with the Clerk of Court to secure the issuance of the injunction.

## IV.   CONCLUSION

The Court GRANTS the Motion and hereby enters the following injunction against Sales:

Defendants Tradition Golf Club Sales and Jeff Larson and their principals, agents, servants employees, attorneys,

16

1  successors or assigns ("Sales"), are enjoined from

2  offering for sale, selling, marketing, advertising, and

3  promoting real estate using the trade names TRADITION or

4  TRADITION GOLF CLUB in a manner likely to cause

5  confusion, mistake or deception as to the affiliation,

6  connection, or association of Sales, or its products and

7  services, with Associates, or as to the origin of Sales'

8  products.

9

10      Associates shall post a bond of $2,500 with the Clerk

11  of Court.

12

13  Dated: December 17, 2008      _____

14                                VIRGINIA A. PHILLIPS
                                  United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28